IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KHALED A. SHAIR, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> vs. ) <br> ) <br> QATAR ISLAMIC BANK, ) <br> KHALID BIN AHMAD AL SWAIDI, ) <br> ABDELLATIF AL MEER, and ) <br> CHOUDHRY MOHAMMAD WASI, ) <br> ) <br> Defendants. ) | Civil Action No.: 1:08-cv-01060 <br> Judge Joan Humphrey Lefkow <br> Magistrate Judge Morton Denlow |

## ALL DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants Qatar Islamic Bank, Khalid Bin Ahmad Al Swaidi, Abdellatif Al Meer, and Choudhry Mohammad Wasi respectfully move this Court to dismiss Plaintiff's complaint for failure to plead his claims with particularity as required by Federal Rule of Civil Procedure 9(b) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). This motion is supported by the accompanying memorandum of law.

Dated: June 17, 2008

/s/ John L. Oberdorfer
John L. Oberdorfer (Admitted *Pro Hac Vice*)
Samantha R. Petrich (Admitted *Pro Hac Vice*)
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000
Fax: (202) 457-6315

Respectfully submitted,

/s/ Kevin M. Forde
Kevin M. Forde
Kevin R. Malloy
KEVIN M. FORDE, LTD.
111 West Washington Street
Suite 1100
Chicago, IL 60602
(312) 641-1441
Fax: (312) 641-1288

*Counsel for All Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KHALED A. SHAIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | Civil Action No.: 1:08-cv-01060 |
| | ) | Judge Joan Humphrey Lefkow |
| QATAR ISLAMIC BANK, | ) | Magistrate Judge Morton Denlow |
| KHALID BIN AHMAD AL SWAIDI, | ) | |
| ABDELLATIF AL MEER, and | ) | |
| CHOUDHRY MOHAMMAD WASI, | ) | |
| | ) | |
| Defendants. | ) | |

**ALL DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Qatar Islamic Bank (QIB) and three of its directors and/or officers at the time of the complained of activities (Khalid Bin Ahmad Al Swaidi (Al Swaidi), Abdellatif Al Meer (Al Meer), and Choudhry Mohammad Wasi (Wasi)) submit this memorandum in support of their Motion to Dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 9(b)(1) and 12(b)(6). This motion urges dismissal of the entire complaint because Plaintiff fails to state a claim and urges dismissal of his fraud claims for the additional reason that they fail to satisfy Rule 9(b)(1)'s particularity requirements. In addition, certain improper allegations should be stricken pursuant to Rule 12(f).

**Introduction**

Plaintiff filed several claims against QIB, as well as Al Swaidi, Al Meer, and Wasi, individually. The complaint aggregates the bank and the three individuals as the "Defendants." Plaintiff's claims relate to communications between QIB and him regarding his future relationship with another entity, U.S. Finance House, and his alleged performance of services for U.S. Finance

1

House. The position that is the focus of the complaint – chief executive officer of U.S. Finance House – expressly depended upon approval of the board of directors of U.S. Finance House, which did not occur.

The complaint is at best conclusory and does not allege key elements of the alleged claims. In particular, Plaintiff fails to identify anything that resembles a contractual document between himself and U.S. Finance House, and certainly not with QIB, and does not allege that a valid and enforceable contract existed. Nor does he allege that any services he performed provided a benefit to Defendants, and does not allege – and certainly does not specify – that QIB, or any of the other Defendants, fraudulently made promises and misrepresentations.

## Statement of Facts

The complaint alleges that QIB entered into a written "Employment Agreement" with Plaintiff, and that all Defendants (not just QIB, the alleged contracting party) breached the "Employment Agreement." (Compl. ¶ 17, Count I & Ex. B.) But there is no "Employment Agreement," and the exhibit Plaintiff characterizes as such (Ex. B) on its face is not a contract. It is a letter making an offer to be chief executive officer at U.S. Finance House, contingent on approval by the never-established U.S. Finance House board, and a separate offer to be an interim at-will consultant to that entity.[1] The complaint does not allege that any other document constitutes a contract, and its utilization of the term "Employment Agreement" is contrary to the actual exhibit.

Although Plaintiff asserts that he provided services from the date of the "Employment Agreement" until February 2006 (Compl. ¶¶ 23-25), the alleged agreement does not specify any services to be provided. As mentioned, Exhibit B contains a critical, unrealized condition precedent – approval by the board of directors of U.S. Finance House of Plaintiff as its chief executive officer. (Compl. Ex. B.) Plaintiff asserts that the condition was met (Compl. ¶ 21), but it could not have

---

[1] The legal significance of the letter is discussed at pp. 5-7 of this Memorandum.

2

been and another of his exhibits shows it was not. (*Compare* Compl. Ex. E *to* Compl. ¶ 21; *see* discussion *infra* at 6.)[2]

The complaint contains several alternative claims – *quantum meruit* (Count II), promissory estoppel (Count III), and fraud (Count IV). Requisite elements of the factual allegations necessary to sustain these three claims are lacking. There is no allegation (because there cannot be) that U.S. Finance House filed a formal bank application with appropriate authorities, that the requisite approval was granted, or that the bank ever opened. Plaintiff alleges he was compensated for work he did (Compl. ¶ 28), but fails to provide facts that would show that his services were more valuable than the compensation he received. With respect to Counts III and IV (promissory estoppel and fraud), Plaintiff only makes vague and conclusory allegations of promises and misrepresentations without providing the specifics required by Rule 9(b). (Compl. ¶¶ 28, 43-46, 50-54.)

## ARGUMENT

**Legal Standard**

Since the Supreme Court's 2007 decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), a court is not to draw inferences in plaintiff's favor that are "too attenuated to be reasonable." *Id.*; *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). Rather, to survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *Zaragon Holdings, Inc. v. Indian Harbor Ins. Co.*, No. 08-cv-0111, 2008 U.S. Dist. LEXIS 34132, at *6 (N.D. Ill. Apr. 25, 2008) (*quoting Bell Atl.*, 127 S. Ct. at 1964). Plausibility is the test; a complaint must "allege 'enough facts to state a claim to relief that is plausible on its face.'" *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008) (*quoting Bell Atl.*, 127 S. Ct. at 1974).

---

[2] When an exhibit to a complaint contradicts an allegation, the exhibit prevails for purposes of evaluating a motion to dismiss. *See* p. 6 *infra*.

3

**I.      All Claims Against the Individual Defendants Should be Dismissed.**

The individual defendants, Al Swaidi, Al Meer, and Wasi, are improper defendants. With respect to the breach of contract and related claims, QIB was the only party to the alleged contract and any actions these individuals took with respect to the alleged contract were made on behalf of QIB as they were acting in their respective corporate capacities.

Plaintiff does not allege otherwise. Where there is a corporate defendant for whom the individual defendants have acted in their official capacities, the individuals must be dismissed. *Zic v. Italian Gov't Travel Office,* 130 F. Supp. 2d 991, 996 (N.D. Ill. 2001), *subsequent determination* 149 F. Supp. 2d 473 (N.D. Ill. 2001). In *Zic*, plaintiff claimed a breach of an alleged employment contract between Zic and the corporation. *See id.* at 996. The court dismissed the breach of contract claims with respect to the individual defendants due to the plaintiff's failure to allege any personal liability on the part of the individual defendants. *See id.* Plaintiff has similarly failed to allege any personal liability of Al Swaidi, Al Meer, or Wasi. Any potential liability is that of QIB, not the individual defendants. *See id.*

The same is true for the fraud claims. Plaintiff "lumps" the individual defendants together with QIB without alleging what specific actions each individual took that constituted a fraud. "Lumping" of defendants does not meet the particularity requirements of Rule 9(b). In *Bruss Co. v. Allnet Commc'n Servs., Inc.*, the plaintiff similarly failed "to include any allegation as to how any individual defendant participated in the fraud." 606 F. Supp. 401, 405 (N.D. Ill. 1985). That court rejected the claims against the individual defendants because, even though the plaintiff made specific allegations regarding the defendant corporation, the "lumping" of the individual defendants with the corporation was "clearly insufficient to support claims of fraud against the individual defendants." *Id.* The lumping of claims here against the "Defendants" and the failure of those claims to

4

particularize, as required by Rule 9(b)(1), mandates dismissal of the fraud claims against Al Swaidi, Al Meer, and Wasi.[3]

## II. Plaintiff's Breach of Contract Claim (Count I) Fails to State a Claim Against Any Defendant.

To state a claim for breach of contract, Plaintiff must allege that (a) a valid and enforceable contract exists; (b) Plaintiff performed his obligations under the alleged contract; (c) Defendants breached the alleged contract; and (d) Plaintiff suffered damages as a result of the breach. *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001); *Talbert v. Home Sav. of Am. F.A.*, 638 N.E.2d 354, 357 (Ill. App. Ct. 1994). A valid and enforceable contract is one where there was an offer, an acceptance, and consideration. *See Talbert*, 638 N.E.2d at 357. The contract must also contain "definite and certain terms." *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007).

Plaintiff does not state a claim for breach of contract. Foremost, Plaintiff bases his breach of contract claim on a document that is not a contract. The allegations do not support that (1) a valid and enforceable contract existed, (2) Plaintiff performed obligations provided for under the alleged contract, or (3) Defendants breached the contract.

Plaintiff alleges that a contract existed, but fails to identify any documents that would constitute a contract, or plead facts showing an offer, an acceptance, and consideration. Under *Talbert*, facts showing an offer, an acceptance, and consideration are required to establish the existence of a contract. *See* 638 N.E.2d at 357. Plaintiff merely makes conclusory statements regarding an offer and an acceptance. The allegation that Plaintiff offered services to Defendants (Compl. ¶ 32) is not supported by any facts. (*See* Compl. ¶¶ 1-3, 14-16, which make no mention of Plaintiff offering services.) Plaintiff further alleges that Defendants accepted his offer in writing

---

[3] The overall deficiencies in the fraud claims as to the individual defendants and the bank are addressed at pp. 11-13.

pursuant to a purported "Employment Agreement." (Compl. ¶ 33.) The alleged "Employment Agreement," however, does not exist.

Rather, the document Plaintiff calls a contract is merely a letter from QIB to Plaintiff primarily offering[4] him the appointment as chief executive officer of U.S. Finance House, conditioned upon the approval of U.S. Finance House's board of directors. (Compl. Ex. B) The complaint does not allege that this offer was accepted or that this condition precedent was satisfied. Therefore, as discussed below, the letter is not binding on any party. *See Warden v. Mc-Graw Hill Cos.*, 98 F. Supp. 2d 971, 974 (N.D. Ill. 2000) (dismissing breach of contract claim because condition precedent was not met; therefore, obligation to pay had not yet arisen).

Plaintiff alleges that U.S. Finance House board approval occurred at a meeting on October 3-4, 2004. (Compl. ¶ 21.) The Court may not rely on this assertion because the exhibit Plaintiff attaches as support – Exhibit E, "Minutes of the Meeting" – contradicts Plaintiff's allegation. (Compl. Ex. E.) "[W]here a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim." *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002). Here, no heading or recitation in Exhibit E supports the assertion that the document actually reflects a meeting of the board of directors of U.S. Finance House. In addition, Exhibit E purports to summarize the attendees' conclusions regarding U.S. Finance House, and appointment of Plaintiff as chief

---

[4] Plaintiff alleges that Exhibit B is QIB's acceptance of Plaintiff's offer of services. (Compl. ¶¶ 32, 33.) This is conclusory, and there are no facts pled to support this allegation. Even assuming Plaintiff offered services to QIB, without knowing the terms of the offer, this letter should be viewed as a counteroffer, not an acceptance, as it was not a "mirror image" offer because it placed a condition on the formation of the relationship – board approval. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 812 F. Supp. 788, 791 (N.D. Ill. 1992) ("[A]cceptance must comply *strictly* with the terms of the offer…An acceptance requiring *any* modification or change of terms constitutes a rejection of the original offer and becomes a counteroffer that must be accepted by the original offeror before a valid contract is formed.").

6

executive officer is not listed as one of these conclusions. Because of this contradiction, the exhibit controls.

Further, the letter is not a valid and enforceable contract because it lacks the "definite and certain" terms required to create a valid and enforceable contract. *Caremark*, 493 F.3d at 850; *Bus. Sys. Eng'g, Inc. v. IBM*, 520 F. Supp. 2d 1012, 1018 (N.D. Ill. 2007). In *Caremark*, the court affirmed summary judgment in favor of the defendant on the breach of contract claim because no contract existed. 493 F.3d at 852. To make this determination, the court reviewed in great detail the elements of a breach of contract claim under Illinois law, as well as what constitutes a valid and enforceable contract. *See id.* at 849-852. The alleged contract, a letter from the defendant to the plaintiff, referred only to "prescription benefits management services" without further defining the obligations of each party. *Id.* at 845. The court held there was no enforceable contract "because the letter [was] silent on the issue of [the] precise performance obligations and because those obligations are not set forth with the requisite specificity, [and] any agreement is so lacking in its description of the exchange as to render it wholly unenforceable as a contract." *Id.* at 850.

Exhibit B, which merely refers to "professional services," is analogous to the letter at issue in *Caremark*. From the face of Exhibit B, it is unclear what the alleged contract required each party to do. Exhibit B does not define what Plaintiff would do as either chief executive officer, or as a consultant. Illinois law requires such specificity "to ensure that the parties in fact have reached an agreement" and to enable the court to determine "whether the agreement has been kept or broken." *Id.*

In summary, the letter which Plaintiff tries to stretch into a contract is no more than an offer of a consultancy position that was never accepted, and an offer of a chief executive officer position conditioned on the never-granted approval of U.S. Finance House's board of directors. (Compl. Ex. B.) Plaintiff tries to convert this offer into a contract by adding his interpretation of a series of

7

meetings and one letter that also is not a contract. By its plain words, however, the letter Plaintiff mischaracterizes as a contract makes any agreement contingent upon board approval. At bottom, Plaintiff's plea is for this Court to speculate that a contractual relationship existed. But the Court cannot speculate, and the complaint does not "allege 'enough facts to state a claim to relief that is plausible on its face.'" *Bell Atl.*, 127 S. Ct. at 1974; *Limestone*, 520 F.3d at 803.

### III. Plaintiff's *Quantum Meruit* Claim (Count II) Fails to State a Claim Against Any Defendant

A *quantum meruit* claim is a quasi-contractual theory that allows courts to imply contracts in law in order to prevent unjust results. *Hayes Mech., Inc. v. First Indus., L.P.*, 812 N.E.2d 419, 426 (Ill. App. Ct. 2004). To state a cause of action for *quantum meruit*, Plaintiff must allege facts that show "the performance of services by the party, the conferral of the benefit of those services on the party from whom recovery is sought, and the unjustness of the latter party's retention of the benefit in the absence of any compensation." *First Nat'l Bank of Springfield v. Malpractice Research, Inc.*, 688 N.E.2d 1179, 1185 (Ill. 1997).

This claim does not satisfy several prerequisites.[5] Plaintiff does not allege his performance of services, especially for 2005. Nor does Plaintiff allege that the Defendants actually received a benefit from his alleged "valuable full-times services to Defendants." (Compl. ¶ 38.) Plaintiff does not allege that a U.S. bank was ever established, or that the process for establishing such a bank even reached the level of a formal application. Consequently, Plaintiff does not and cannot identify any benefit he conferred on QIB, or the value of that benefit.

---

[5] Count II also has pleading deficiencies. It incorporates the allegations in Count I and fails to allege the absence of a valid contract. *See Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 978-79 (N.D. Ill. 2008) (dismissing unjust enrichment claim where plaintiff did not plead the absence of a valid contract and, within the unjust enrichment claim, incorporated by reference other paragraph in the complaint that referred to contractual obligations); *Cole-Haddon, Ltd. v. Drew Philips Corp.*, 454 F. Supp. 2d 772, 777 (N.D. Ill. 2006) (plaintiff did not properly plead quasi-contract claim in the alternative because the claim reasserted all allegations previously stated, including those alleging the existence of a contract).

Plaintiff further fails to show that QIB has retained any benefit in the absence of <u>any</u> compensation. Plaintiff acknowledges that QIB paid him <u>some</u> money. (Compl. ¶ 28.) His actual complaint appears to be that he did not receive as much as he believes he was entitled to under the purported "Employment Agreement." But in this *quantum meruit* claim, Plaintiff has not alleged a critical element – that the services he performed, which did not include filing of a formal application (Compl. ¶¶ 26-27), conferred a benefit more valuable than the compensation he received. In *First National Bank of Springfield*, 688 N.E.2d at 1185, the Illinois Supreme Court stated that a party seeking to recover on a *quantum meruit* theory must demonstrate, *inter alia*, the unjustness of the defendant's retention of a benefit conferred by the plaintiff "*in the absence of any compensation.*" (emphasis supplied). Here, because plaintiff acknowledges that he received some compensation for his services, his *quantum meruit* claim should be dismissed. *See Roti v. Roti*, 845 N.E.2d 892, 901 (Ill. App. Ct. 2006) (dismissing *quantum meruit* claim where no specific factual allegations supported that defendant paid less than the reasonable value of plaintiff's services). *Cf. Donnelli v. Peters Sec. Co.*, No. 02-C-0691, 2002 WL 2003217, at *7 (N.D. Ill. Aug. 29, 2002) (noting in *dicta* that Illinois case law supports dismissal of *quantum meruit* claim based on plaintiff's allegation that he was paid some compensation for his services).

**IV.   Plaintiff's Promissory Estoppel Claim (Count III) Fails to State a Claim Against Any Defendant.**

Under Illinois law, to succeed on a promissory estoppel claim, a plaintiff must prove: (1) an unambiguous promise by defendants; (2) reliance by plaintiff on the promise; (3) plaintiff's reliance was expected and foreseeable by the defendants; and (4) plaintiff's reliance on the promise to its detriment. *Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 1004 (Ill. 1980); *Yardley v. Yardley*, 484 N.E.2d 873, 878 (Ill. App. Ct. 1985). Plaintiff fails to allege any of these requisite elements.

Plaintiff does not allege any specific unambiguous promise upon which to base a promissory estoppel claim. Count III merely alleges that "From on and around March 21, 2004, through

9

February, 2006, Defendants promised Plaintiff compensation for the services rendered." (Compl. ¶ 46.) There are no specific, unambiguous promises attributed to any of the individual or corporate Defendants.

To the extent Plaintiff alleges any specific promises, he relies on Exhibit B. But, at most, that makes Plaintiff's appointment as chief executive officer of U.S. Finance House and his remuneration contingent. Exhibit B states: "However, your appointment and remuneration shall be confirmed by the Board of Directors of U.S. Finance House." (Compl. Ex. B.) Board approval never occurred. (Compl. Ex. E.) Nor do Plaintiff's repeated allegations as to Defendants' vague "assurances and commitments" (Compl. ¶¶ 26-28) rescue his claim. *See Yardley*, 484 N.E.2d at 878-79 (affirming dismissal of promissory estoppel claim, finding bank's statement of current expectations as to how estate plan would be carried out was not a definite promise). Plaintiff's conclusory allegations of an unambiguous promise amount to a call for this Court to speculate as to what promises may have been made, contrary to *Bell Atlantic*.

Additionally, since Plaintiff was aware that his appointment and remuneration were subject to board approval, his reliance was not reasonable. "'Only where the parties do not have equal knowledge, or access thereto, or where there are other peculiar circumstances inducing the injured party to rely solely on the representation of the other will a person be found to have justifiably relied upon the other's representation.'" *Glass v. Kemper Corp.*, 949 F. Supp. 1341, 1347-48 (N.D. Ill. 1997) (quoting *Runnemede Owners, Inc. v. Crest Mortgage Corp.*, 861 F.2d 1053, 1058 (7th Cir. 1988)). In determining a lack of justifiable reliance, the crucial inquiry is "whether the plaintiff's conduct was so unreasonable under the circumstances and 'in light of the information open to him, that the law may properly say that the loss is his own responsibility.'" *Runnemede*, 861 F.2d at 1058-59 (quoting *Teamsters Local 282 Pension Trust Fund v. Angelos*, 839 F.2d 366, 371 (7th Cir. 1988)).

In *Glass v. Kemper*, the court found, as a matter of law, that the plaintiff could not have justifiably relied on the oral promises of defendant's agent that he had authority to make a binding commitment of employment on behalf of the defendant corporation. The evidence showed, among other things, that the plaintiff received written communications from the agent that the corporation's board of directors would have to approve the new employment agreements. 949 F. Supp. at 1344, 1349-50. Thus, the plaintiff's reliance on the agent's oral assertions was unreasonable. *Id.* at 1350. Here, any reliance on oral "assurances" would be unreasonable since Plaintiff's own exhibit shows that an appointment as chief executive officer and any salary for that position was contingent on board confirmation.

The similarities of this case to *Mason & Dixon Lines, Inc. v. Glover*, 975 F.2d 1298, 1305 (7th Cir. 1992), are remarkable. The Court of Appeals ruled that plaintiffs could not have reasonably relied on a union pension fund trustee's oral assurances that he had authority to settle litigation between the plaintiffs and the pension fund because the trustee previously had written a letter telling plaintiffs that all of the trustees of the pension fund must agree to the settlement. Here, Plaintiff does not allege oral assurances, and just as in *Mason & Dixon*, allegedly relied on contingent promises (board approval), which never occurred.[6] Taking into account all of Plaintiff's allegations with respect to promissory estoppel, the complaint does not "allege 'enough facts to state a claim to relief that is plausible on its face.'" *Bell Atl.*, 127 S. Ct. at 1974; *Limestone*, 520 F.3d at 803.

**V.      Plaintiff's Fraud Claim (Count IV) Fails to Satisfy the Particularity Requirement of Rule 9(b).**

To prevail on a fraud claim, a plaintiff must prove: (1) a false statement of material fact made by defendants, (2) that was known or believed to be false by defendants, (3) and was made by defendants with the intent to induce plaintiff to act, (4) such that plaintiff justifiably relied on the

---

[6] While *Glass* and *Mason & Dixon* were both decided on summary judgment, they apply at this stage because Plaintiff's allegations preclude a finding of reasonable reliance.

11

statement, and (5) as a result of such reliance, suffered damages. *See Caremark*, 493 F.3d at 852. Each element is subject to the pleading requirements of Federal Rule 9(b) that "all averments of fraud" be pled with particularity. This heightened standard requires pleading "the who, what, when, where, and how" of the alleged fraud. *Logan Square MRI & Diagnostic Ctr., Inc. v. Philips Elecs. N. Am. Corp.*, 545 F. Supp. 2d 816, 818 (N.D. Ill. 2008) (*citing DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). Thus, a plaintiff "must state 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated.'" *Hoffman v. Sumner*, 478 F. Supp. 2d 1024, 1033 (N.D. Ill. 2007). Plaintiff fails to do so.

First, Plaintiff fails to allege *who* made the fraudulent misrepresentations and promises. Plaintiff's "lumping" of the Defendants (Compl. ¶¶ 50-54) is insufficient under Rule 9(b), and requires dismissal of the fraud claim against all Defendants. *See Zic*, 149 F. Supp. 2d at 477 ("Rule 9(b) means that a plaintiff may not 'lump' multiple defendants together in a fraud claim."); *see also Bruss Co. v. Allnet Comm'n Servs., Inc.*, 606 F. Supp. 401, 405 (N.D. Ill. 1985). "[W]hen there are allegations of a fraudulent scheme with multiple defendants, the complaint must inform each defendant of the specific fraudulent acts which constitute the basis of the action against each particular defendant." *Id.* The court in *Zic* dismissed an individual defendant from the fraud claim due to the plaintiff's failure to identify "any particular actions of" that particular individual defendant. *See Zic*, 149 F. Supp. at 477. Because Plaintiff fails to allege who made any fraudulent statement, no claim of fraud lies against QIB or the individual defendants.

Second, Plaintiff fails to allege the remaining requirements: *what, when, where, and how.* Plaintiff merely alleges the subject matter of the statements. (Compl. ¶ 30 [*sic*] (Count IV – Fraud).) These allegations do not satisfy Rule 9(b). *See Hoffman*, 478 F. Supp. 2d at 1033; *see also Logan Square*, 545 F. Supp. 2d at 818-19 (Count II dismissed for failure to meet heightened standard because the

12

allegations did not set forth the who, what, where, why, and how, but Count IV was not dismissed because it specified the date of the statement, who made it, and why, how, and where it was made.).

Without this predicate statement, Plaintiff is unable to satisfy the remaining elements of the fraud claim. Plaintiff must particularly allege that such statement was known or believed to be false by Defendants, which cannot be done when no such statement exists. Nor can Plaintiff establish that Defendants intended to induce Plaintiff to act, or that Plaintiff's reliance on such statement was reasonable because there is no statement on which to base these allegations. Thus, the complaint is devoid of allegations to establish fraud.

Similar to Plaintiff's promissory estoppel allegations, Plaintiff again relies on conclusory allegations with respect to the fraud claim. Plaintiff is in effect asking this Court to speculate the contours of the alleged misrepresentations, as well as the remaining elements of the fraud claim, contrary to the plausibility requirement established in *Bell Atlantic* and *Limestone*.

## VI. Plaintiff's Requests For Treble Damages And Attorneys Fees Should Be Stricken.

Plaintiff's requests for treble damages and attorneys fees are improper under Illinois law and should be stricken.

"Illinois follows the American rule, under which attorney fees are not available unless the parties have agreed to them or a statute provides for them." *In re Weinschneider*, 395 F.3d 401, 404 (7th Cir. 2005). *See also Duignan v. Lincoln Towers Ins. Agency, Inc.,* 667 N.E.2d 608, 613 (Ill. App. Ct. 1996); *Krantz v. Chessick,* 668 N.E.2d 77, 81 (Ill. App. Ct. 1996). Here, Plaintiff does not allege any statutory or contractual basis for the requested relief. Accordingly, Plaintiff's requests for an award of attorneys' fees should be stricken. *See First Mfrs. Computer Outlet v. Sears Roebuck & Co.*, No. 06-C-3975, 2007 WL 1455830, at *3 (N.D. Ill. May 11, 2007) (striking request for attorney's fees).

Plaintiff also requests treble damages in his prayer for relief in the count for fraud. Again, Plaintiff does not allege any statutory basis for this request, which is otherwise unavailable. *Cf.*

13

*Dardeen v. Heartland Manor, Inc.,* 710 N.E.2d 827, 832 (Ill. 1999) (repeal of statutory provision allowing treble damages applied retroactively to plaintiff's pending suit to bar recovery of such damages). The request for treble damages should be stricken.

**VII.    Allegations And Exhibit Regarding Settlement Discussions Should Be Stricken Pursuant To Rule 12(f).**

A defendant may move to strike any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). Motions to strike may be granted if the allegations have no bearing on the subject matter of the litigation and will prejudice the defendants. *Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 664 (7th Cir.1992).

Federal Rule of Evidence 408 forbids the admission of statements made during settlement negotiations to prove liability or lack of liability. *Bankcard Am., Inc. v. Universal Bancard Sys., Inc.,* 203 F.3d 477, 483 (7th Cir. 2000). Because settlement talks might be chilled if such discussions could later be used as admissions of liability at trial, the rule's purpose is to encourage settlements. *Id.*

In *Braman v. Woodfield Gardens Assocs., Realcorp Investors I*, 715 F. Supp. 226, 230 (N.D. Ill. 1989), the court granted the defendant's motion to strike allegations involving settlement negotiations, finding that the underlying purpose behind Rule 408 would be undermined if the court were to admit statements made during settlement negotiations. *See also Fidelity Nat'l Title Co. v. Law Title Ins. Co.*, No. 04-C-6382, 2005 WL 1126899, at *5-7 (N.D. Ill. May 3, 2005) (striking allegations and exhibit of complaint where settlement letter is discussed and quoted); *RSL Holding Co. v. Dresser Indus., Inc.*, No. 89-C-7004, 1991 WL 203864, at *4 (N.D. Ill. Oct. 1, 1991) (noting that "courts in this district have not hesitated to strike allegations which violated Rule 408").

Here, Plaintiff alleges that "Defendant QIB admitted in writing, signed by El Sayed Hammouda, First Executive Manager, Legal Affairs Department of Defendant QIB, that additional payments were due Plaintiff" and attaches a letter as Exhibit G. (Compl. ¶ 30.) Exhibit G, a letter

14

from QIB's in-house counsel to Plaintiff's attorney, is part of a settlement discussion and responds to Plaintiff's earlier settlement demand.

Plaintiff inaccurately and improperly seeks to put settlement discussions before the Court and use them as an admission of some liability. The allegations and exhibit, therefore, are impertinent, immaterial and prejudicial to Defendants.

## Conclusion

For the foregoing reasons, Defendants ask that the complaint be dismissed. None of the claims are plausible under *Bell Atlantic*. The individuals are improper defendants with respect to all contract-related claims; Counts I-IV fail to state a claim; and Count IV additionally fails to plead with particularity. Also, the Court should strike Plaintiff's request for treble damages and attorneys' fees, and a portion of ¶ 30 of the Complaint and Exhibit E.

Dated: June 17, 2008                                    Respectfully submitted,


John L. Oberdorfer                                      Kevin M. Forde
John L. Oberdorfer (Admitted *Pro Hac Vice*)            Kevin M. Forde
Samantha R. Petrich (Admitted *Pro Hac Vice*)           Kevin R. Malloy
PATTON BOGGS LLP                                        KEVIN M. FORDE, LTD.
2550 M Street, NW                                       111 West Washington Street
Washington, DC 20037                                    Suite 1100
(202) 457-6000                                          Chicago, IL 60602
Fax: (202) 457-6315                                     (312) 641-1441
                                                        Fax: (312) 641-1288


*Counsel for All Defendants*