# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| Khaled A. Shair | ) | |
|     Plaintiff, | ) | Civil Action No. 08-cv-01060 |
| | ) | |
| vs. | ) | |
| | ) | |
| Qatar Islamic Bank, | ) | **JURY TRIAL DEMANDED** |
| Khalid Bin Ahmad Al Swaidi, | ) | |
| Abdellatif Al Meer, | ) | Hon. Joan H. Lefkow |
|     and | ) | |
| Chaudhary Mohammad Wasi, | ) | |
|     Defendants. | ) | |

## AMENDED COMPLAINT

Plaintiff, Khaled A. Shair ("Plaintiff"), by and through his attorney, Bruce de'Medici, and for his amended complaint against defendants Qatar Islamic Bank ("QIB"), Mr. Khalid Bin Ahmad Al Swaidi ("Al Swaidi"), Dr. Abdullatif Al Meer ("Al Meer"), Mr. Chaudhary Mohammad Wasi ("Wasi") and, together with QIB, Al Swaidi, and Al Meer, (collectively, "Defendants"), alleges as follows:

### Introduction

1. On or about March 21, 2004, officers of QIB met in Chicago, Illinois with the Plaintiff and others to discuss the establishment of a commercial bank in the United States that would provide banking services based upon Islamic banking principles.

2. At the March 21, 2004 meeting, the officers of QIB authorized and directed Plaintiff to organize a commercial bank to be named "U.S. Finance House" ("U.S. Finance House"), headquartered in Chicago, Illinois, and licensed under United States or Illinois state banking laws, with Plaintiff to be appointed as Chief Executive Officer thereof.

1

3. Shortly after the March 21, 2004 meeting, Defendants entered into several written and oral agreements with Plaintiff and several specific written and oral commitments to Plaintiff to undertake the task of organizing and licensing the bank, which commitments included hiring Plaintiff to advise Defendants regarding organizing the bank, employing necessary services and consultants, locating and equipping the necessary banking facilities, employing Plaintiff as the Chief Executive Officer of the bank in organization, reimbursing the significant expenses of organizing the bank, and funding the regulatory capital requirements of the bank.

4. At the time of the March 21, 2004 meeting and when the several written and oral agreements and commitments were entered into, Plaintiff was gainfully employed as Managing Director by the holding company of several United States domestic banks and President and Chief Executive Officer of one of its subsidiaries. In reasonable and foreseeable reliance upon the written and oral agreements and commitments of Defendants, and with the knowing inducement by Defendants, Plaintiff terminated his gainful employment and undertook the arduous full-time task of organizing and licensing the bank on behalf of Defendants.

5. Defendants breached all written and oral agreements with the Plaintiff and failed to fulfill any of the written and oral commitments to Plaintiff, despite repeated demands from Plaintiff and repeated assurances from Defendants inducing Plaintiff to terminate his gainful employment, and continue serving Defendants.

6. The actions and failures of Defendants to fulfill their written and oral agreements and commitments to Plaintiff resulted in loss of employment and income by Plaintiff, non-payment of agreed fees, expenses and salary due Plaintiff, severe damage

to the reputation of Plaintiff in the United States commercial banking and investment banking community, and direct costs and expenses of Plaintiff, all of which were intentional, foreseeable and probable outcomes of Defendants' actions and breaches.

## Parties

7. Plaintiff Khaled A. Shair is an individual, citizen of the United States of America, with a principal residence in the State of Illinois.

8. On information and belief, Defendant Qatar Islamic Bank is a banking organization organized under the laws of the State of Qatar, headquartered in Doha, Qatar, and operating in several countries, including the United States, and maintains banking accounts, investment accounts and direct investments throughout the United States.

9. On information and belief, Defendant Khalid Bin Ahmad Al Swaidi is a citizen and resident of the State of Qatar and was, at all relevant times, the Chairman and Managing Director of QIB and an individual organizer of U.S. Finance House.

10. On information and belief, Defendant Chaudhary Mohammad Wasi is a citizen and resident of the State of Qatar, and was, at all relevant times, the Chief Financial Officer of QIB and an individual organizer of U.S. Finance House.

11. On information and belief, Defendant Dr. Abdullatif Al Meer is a citizen and resident of the State of Qatar and a permanent resident of the United States and may maintain a residence in the State of New York, and was, at all relevant times, the Assistant General Manager of QIB and an individual organizer of U.S. Finance House.

## Jurisdiction and Venue

12. Jurisdiction arises pursuant to 28 U.S.C. § 1332 because the amount in

controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and it involves claims or controversies between citizens of different states. There is complete diversity of citizenship in this case, because Plaintiff is citizen of Illinois and Defendants are all citizens of, or organized under the laws of, a foreign country, or residents of the United States residing in a different state or foreign country.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a) and (c), diversity of citizenship between Plaintiff, who resides in the district, and Defendants, and a substantial part of the events giving rise to the claims herein occurred exclusively in this district, and Defendants are subject to personal jurisdiction due to their activities conducted in this district.

**Organizing U.S. Finance House**

14. On or about March 21, 2004, Defendants met the Plaintiff in Chicago, Illinois to discuss the organization of U.S. Finance House, as an Illinois state licensed full service bank providing banking services based upon Islamic banking principles, and authorized Plaintiff to undertake all necessary steps to organize and obtain required banking licenses for U.S. Finance House, agreeing to compensate Plaintiff for his services as Chief Executive Officer of U.S. Finance House in organization.

15. Through correspondence dated March 28, 2004, signed by Defendant Al Meer, Defendant QIB authorized and directed Plaintiff in writing, to establish U.S. Finance House in Illinois, with a target opening of October 2004. See Exhibit A hereto.

16. On April 26, 2004, Defendants met with the Plaintiff in Doha, Qatar to further discuss the organization and licensing of U.S. Finance House. At these meetings the details of organizing, funding and licensing U.S. Finance House were confirmed by

4

Defendants, including hiring and compensating Plaintiff for services to be rendered by Plaintiff in this regard as Chief Executive Officer of U.S. Finance House in organization, and offering Plaintiff the position of Chief Executive Officer of U.S. Finance House.

17. On April 28, 2004, QIB made a written offer to Plaintiff (the "Employment Agreement"), signed by Defendant Al Swaidi, to appoint Plaintiff as Chief Executive Officer of U.S. Finance House with remuneration to be "in line with American Finance Industry Standards." See Exhibit B hereto.

18. Notably, in correspondence dated April 27, 2004, signed by Defendant Al Swaidi, Defendants addressed Plaintiff as Chief Executive Officer of U.S. Finance House. See Exhibit M hereto.

19. Pursuant to the Employment Agreement, the initial compensation rate for Plaintiff was to be $10,000 per month, pending the confirmation by U.S. Finance House of Plaintiff's appointment as Chief Executive Officer thereof, at which point Plaintiff's the compensation was to be "in line with American Finance Industry Standards." See Exhibit B hereto.

20. On or about April 28, 2004, Plaintiff received the Employment Agreement and immediately accepted the offer set forth therein. See Exhibits E, F and H hereto.

21. In July 2004, Plaintiff completed a satisfactory feasibility study and business plan supporting the likely success of U.S. Finance House as a licensed state bank to conduct banking services in Illinois.

22. On or about September 9, 2004 Defendants confirmed the officers of U.S. Finance House, appointing Wasi as Chief Financial Officer and establishing the annual salary of the Chief Financial Officer at $300,000. See Exhibit C hereto.

23. On or about September 9, 2004, Defendant QIB executed a written guaranty of rents, signed by Defendant Wasi, thereby authorizing the lease of banking premises for U.S. Finance House in Chicago. See Exhibit D hereto.

24. At a meeting of the board of organizers of U.S. Finance House, held on October 3 and 4, 2004, in London, England, the organizers of U.S. Finance House, including the Defendants, confirmed appointment of officers of U.S. Finance House, including the appointment of Plaintiff as Chief Executive Officer, approved the required capital funding commitment, and authorized all other steps necessary to complete the organization of U.S. Finance House as a licensed Illinois state bank. These actions are reflected in the Minutes of the meeting of the board of organizers. See Exhibit E hereto.

25. Upon returning to the United States from the meeting of the board of organizers held by Defendants, at the behest of and with the knowing inducement by Defendants, Plaintiff terminated his gainful employment as Managing Director of Founders Group, Inc., a multi-bank holding company of eight successful FDIC member banks, and as President and Chief Executive Officer of Interbanx Southwest, Inc., a wholly owned subsidiary of Founders Group, Inc., and undertook the full-time, arduous task of organizing and licensing the bank on behalf of Defendants, pursuant to the Employment Agreement.

26. From October 2004 until February 2006, Plaintiff dutifully performed the tasks customarily performed by a Chief Executive Officer of a bank in organization, including without limitation: preparing feasibility studies and business plan, locating and securing appropriate banking facilities at 207 South LaSalle Street, Chicago, Illinois, meeting with regulatory authorities and members of the commercial and investment

banking community, establishing key contacts in the target customer base, interviewing and evaluating prospective employees, arranging Federal Reserve Board, Homeland Security and Federal Bureau of Investigation ("FBI") background checks of Defendants as organizers of a United States domiciled bank, and Defendant QIB, and preparing and filing all necessary documentation for the application of U.S. Finance House to conduct banking activities in the State of Illinois. See Exhibits H, I, J, K and L.

27. From October 2004 until February 2006, Plaintiff communicated regularly with the banking regulatory authorities in the State of Illinois, who were very positive about the prospects of the licensing of U.S. Finance House to conduct banking services in Illinois. See Exhibits F and L hereto.

28. Through correspondence dated December 7, 2004, signed by Defendant Al Swaidi, as "Chairman of U.S. Finance House" to the Illinois Department of Financial and Professional Regulation, U.S. Finance House filed its application for a permit to organize a state bank in Illinois, along with the business plan and financial projections that Plaintiff prepared in his capacity as the Chief Executive Officer and in reliance upon Defendants' compliance with the Employment Agreement. See Exhibit H hereto.

29. Through the correspondence dated December 7, 2004, signed by Defendant Al Swaidi, as "Chairman of U.S. Finance House" to the Illinois Department of Financial and Professional Regulation, Defendants also confirmed and represented to the State of Illinois, the employment of Plaintiff as Chief Executive Officer of U.S. Finance House. See Exhibit H hereto.

30. As required by 205 ILCS 5/8, the incorporators of U.S. Finance House were acting in their individual capacities.

7

31. As required by 205 ILCS 5/9, the application included, *inter alia*, the names, residences, business occupations, and addresses of each of the organizers as well as a statement of the management.

32. As required by 205 ILCS 5/10, upon the filing of the application the Commissioner of the Illinois Department of Financial and Professional Organizations was required to consider, *inter alia*, the "character, experience, and qualifications" of the management, the truth of the statements in the application, and the business plan.

33. As required by 205 ILCS 5/15, Defendants were precluded from changing senior management personnel from those identified in the application for a period two years after the issuance of the banking charter for U.S. Finance House.

34. Thus, upon the issuance of the charter, U.S. Finance House was obligated to install the very senior management personnel that it identified in the application.

35. Thus, Defendants were obligated to, and in fact did, commit to and identify officers for U.S. Finance House, including but not limited to Plaintiff, as a requirement for the approval by the Illinois Department of Financial and Professional Organizations of its permit to organize a state bank in Illinois.

36. Thus, Defendants actually confirmed Plaintiff's employment per the Employment Agreement prior to and as a requirement of the permit to organize a state bank in Illinois. See Exhibit H hereto.

37. From October 2004 until February 2006, Plaintiff regularly communicated to Defendants the development and progress of the organization and licensing of U.S. Finance House as a licensed Illinois state bank, urging Defendants to complete the

necessary personal and financial information forms in order to move forward with the formal application process with the banking regulatory authorities.

38. Despite repeated requests to Defendants by Plaintiff, for deposit of the regulatory capital of U.S. Finance House, previously authorized by Defendants, and continued and repeated knowing assurances and commitments by Defendants to so deposit the required regulatory capital, the required bank capital was never deposited.

39. Despite repeated requests to Defendants by Plaintiff, and continued and repeated knowing assurances and commitments from Defendants, Defendants withheld necessary personal and financial information, Federal Reserve Board, FBI and Homeland Security background check forms, necessary financial documentation, and capital required for Plaintiff to complete the organization and licensing of U.S. Finance House to conduct banking services in the state of Illinois.

40. Despite repeated demands to Defendants by Plaintiff for payment of his compensation and expenses, and continued and repeated knowing assurances and commitments by Defendants to compensate Plaintiff, no payments were made to Plaintiff after an initial payment of approximately $30,000, paid in mid-2004.

41. In a letter in the Arabic language signed by Defendant Al Meer, dated December 16, 2005, placed with a courier service on February 16, 2006, and received by Plaintiff on February 21, 2006 (the "February 21 Notification"), Defendants abruptly notified Plaintiff that Defendants determined to terminate the organization of U.S. Finance House, while concurrently commending Plaintiff's efforts and activities on behalf of Defendants.

42. Despite repeated demands to Defendants by Plaintiff, prior to and after the February 21 Notification, for payment of his compensation and expenses during the period from April 28, 2004 through February 21, 2006, no additional payments were made to Plaintiff, although Defendant QIB admitted in writing, signed by El Sayed Hammouda, First Executive Manager, Legal Affairs Department of Defendant QIB, that additional payments were due Plaintiff.  See Exhibit G hereto.

43. The value of the services that Plaintiff provided to Defendants exceeded the sums paid to him and Defendants were unjustly enriched thereby.

**Count I**
**Breach of Contract**

44. Plaintiff realleges and incorporates by reference paragraphs 1 through 43, as fully set forth herein.

45. Plaintiff has offered the services to Defendants.

46. Defendant accepted Plaintiff's offer in writing pursuant to the Employment Agreement.

47. Plaintiff fully and conscientiously performed the agreed services.

48. Plaintiff requested Defendants pay the agreed value of the services and, although Defendants repeatedly assured Plaintiff payment for the services, Defendants have failed to make any payment.

WHEREFORE, Plaintiff respectfully request judgment against Defendants in the amount of $672,083.33, representing the value of the contract, plus $30,000.00 in reimbursable expenses; costs and attorney's fees pursuant to any available statutory or common law basis; and further relief as the Court shall deem just and proper.

# Count II
## *Quantum Meruit*
### (In the Alternative to Other Counts)

49. Plaintiff realleges and incorporates by reference paragraphs 1 through 43, as fully set forth herein.

50. In the event that the written and oral agreements are not enforceable, Plaintiff is entitled to recover in quantum meruit.

51. At the request, encouragement and inducement of Defendants, Plaintiff terminated his gainful employment, refrained from offering his services to other clients or potential employers, ceased discussions with such other clients and potential employers, and performed valuable full-time services to Defendants.

52. Plaintiff fully and conscientiously performed the agreed services.

53. Defendants enjoyed the value of said services, encouraged and knowingly induced Plaintiff to perform the Services, knowingly took advantage of said services, and refused to pay Plaintiff for the fair and reasonable value of said services.

54. Defendants have thus been unjustly enriched through the enjoyment of the Services.

WHEREFORE, Plaintiff respectfully request judgment against Defendants in the amount of $672,083.33, the fair and reasonable value of the services rendered to Defendants, plus $30,000.00 in reimbursable expenses; costs and attorney's fees pursuant to any available statutory or common law basis; and further relief as the Court shall deem just and proper.

## Count III
## Promissory Estoppel
### (In the Alternative to Other Counts)

55. Plaintiff realleges and incorporates by reference paragraphs 1 through 43, as fully set forth herein.

56. From on and about March 21, 2004, through February, 2006, Defendants requested, encouraged and knowingly induced Plaintiff to perform services for the benefit of Defendants.

57. From on and around March 21, 2004, through February, 2006, Defendants promised Plaintiff compensation for the services rendered.

58. As a result of the promises made by Defendants and the knowing inducement of Defendants, Plaintiff terminated his gainful employment, refrained from offering his services to other clients or potential employers, ceased discussions with such other clients and potential employers, and performed valuable full-time services to Defendants.

59. Plaintiff notified Defendants that, on the basis of Defendants' agreements and promises, Plaintiff terminated his gainful employment, refrained from offering his services to other clients and potential employers, cease discussions with such other clients and potential employers, and performed full-time services to Defendants.

60. Plaintiff's reliance on Defendants' promises was expected, foreseeable and knowing by Defendants.

61. Plaintiff relied on Defendants' promises to his detriment, with the full knowledge, inducement and encouragement of Defendants, and has been economically damaged.

WHEREFORE, Plaintiff respectfully request judgment against Defendants in the amount of $672,083.33, the fair and reasonable value of the services rendered, plus $30,000.00 in reimbursable expenses; costs and attorney's fees pursuant to any available statutory or common law basis; and further relief as the Court shall deem just and proper.

**Count IV**
**Fraud**
**(In Addition to Other Counts)**

62. Plaintiff realleges and incorporates by reference paragraphs 1 through 43, as fully set forth herein.

63. Defendants promised orally and in writing to pay Plaintiff's reasonable compensation for the services performed by Plaintiff, and misleadingly approved the organization, capitalization and licensing of U.S. Finance House, with no intention to file the required personal background and financial information and regulatory documents, or to provide the promised capitalization of U.S. Finance House, so as to intentionally, willfully and knowingly mislead the Plaintiff to terminate his gainful employment, refrain from offering his services to other clients or potential employers, cease discussions with such other clients and potential employers, and perform valuable full-time services to Defendants, including without limitation, presenting U.S. Finance House to Illinois State banking regulatory authorities, the commercial banking and investment banking communities, the target customer base, and prospective officers and employees.

64. As a result of the fraudulent representations and promises made by Defendants to Plaintiff, Plaintiff terminated his gainful employment, refrained from offering his services to other clients or potential employers, ceased discussions with such

other clients and potential employers, performed valuable full-time services to Defendants.

65. As a result of the fraudulent representations and promises made by Defendants to Plaintiff, Plaintiff utilized on behalf of Defendants, and thereby severely damaged, his valuable business reputation with the banking regulatory authorities, the commercial and investment banking community, the target customer base of U.S. Finance House, and prospective clients and employers.

66. Plaintiff notified Defendants that, on the basis of Defendants' promises, Plaintiff terminated his gainful employment, refrained from offering his services to other clients or potential employers, ceased discussions with such other clients and potential employers, and performed valuable full-time services to Defendants, including without limitation, presenting U.S. Finance House to Illinois State banking regulatory authorities, the commercial banking and investment banking communities, the target customer base, and prospective officers and employees.

67. Plaintiff's actions in reliance on Defendants' promise of compensation for the services performed and Defendants' commitment to organize, capitalize, license and operate U.S. Finance House were reasonable, expected and foreseeable by Defendants.

68. Defendants' intentional and fraudulent failure to carry forward its representations, agreements, promises and commitments to compensate Plaintiff for his valuable services, and Defendants' intentional and fraudulent failure to complete the agreed organization, capitalization, application, licensing and operation of U.S. Finance House, resulted in foreseeable substantial loss of income to Plaintiff and foreseeable severe damage to the business reputation of Plaintiff with the banking regulatory

authorities, the commercial and investment banking community, the target customer base of U.S. Finance House, and prospective clients and employers.

69. Plaintiff reasonably and foreseeably relied on Defendants' fraudulent representations and promises to his detriment and was severely economically damaged thereby.

WHEREFORE, Plaintiff respectfully request judgment against Defendants in the amount of $2,046,249.99, representing three times the unpaid agreed compensation, plus reimbursable expenses, the exact amount to be determined at trial; plus $5,000,000, compensation for the damage caused to Plaintiff's personal and business reputation in the banking industry, the exact amount to be determined at trial; an additional amount equal to the costs and attorney's fees pursuant to any available statutory or common law basis; and further relief as the Court shall deem just and proper.

## Count V
## Promissory Fraud
### (In Addition to Other Counts)

70. Plaintiff realleges and incorporates by reference paragraphs 1 through 43, as fully set forth herein.

71. Defendants promised orally and in writing to pay Plaintiff's reasonable compensation for the services performed by Plaintiff, and misleadingly approved the organization, capitalization and licensing of U.S. Finance House, with no intention to file the required personal background and financial information and regulatory documents, or to provide the promised capitalization of U.S. Finance House, so as to intentionally, willfully and knowingly mislead the Plaintiff to terminate his gainful employment, refrain from offering his services to other clients or potential employers, cease discussions with

such other clients and potential employers, and perform valuable full-time services to Defendants, including without limitation, presenting U.S. Finance House to Illinois State banking regulatory authorities, the commercial banking and investment banking communities, the target customer base, and prospective officers and employees.

72. Defendants' promises in this regard were credible and made as a commitment to Plaintiff, with the intent of convincing Plaintiff that they were credible.

73. The Defendants' promises in this regard were made with the intent that the Defendants appeared to be capable of performing their promises.

74. The Defendants were not mistaken about the meaning or apparent credibility of their promises or Plaintiff's reliance upon their meaning and apparent credibility.

75. Plaintiff's reliance on Defendants' promises was expected, foreseeable, and knowing by Defendants.

76. Defendants made their promises knowing them to be false, or with recklessness as to their falsity.

77. When Defendants made their promises they did so without the intent to abide by them

78. Defendants made their promises as part of a scheme to defraud Plaintiff.

WHEREFORE, Plaintiff respectfully request judgment against Defendants in the amount of $2,046,249.99, representing three times the unpaid agreed compensation, plus reimbursable expenses, the exact amount to be determined at trial; plus $5,000,000, compensation for the damage caused to Plaintiff's personal and business reputation in the banking industry, the exact amount to be determined at trial; an additional amount equal to the costs and attorney's fees pursuant to any available statutory or common law basis; and further relief as the Court shall deem just and proper.

Respectfully submitted,

Dated: July 29, 2008        **KHALED A. SHAIR**

By: ___/s/ Bruce de'Medici___
      One of his attorneys

Bruce de'Medici
Law Office of Bruce E. de'Medici
333 West Wacker Drive
Suite 333
Chicago, Illinois 60606
Tel: 312.251.1000
E mail: Bdemedici@mandellmenkes.com
171242