**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Khaled A. Shair | ) | |
| Plaintiff, | ) | Civil Action No. 08-cv-01060 |
| | ) | |
| vs. | ) | |
| | ) | |
| Qatar Islamic Bank, | ) | |
| Khalid Bin Ahmad Al Swaidi, | ) | |
| Abdellatif Al Meer, | ) | Hon. Joan H. Lefkow |
| and | ) | |
| Chaudhary Mohammad Wasi, | ) | |
| Defendants. | ) | |

# Complaint Exhibit H

# Qatar Islamic Bank

(S.A.Q.)


Chairman



December 7, 2004

Mr. Fernando E. Grillo
Secretary
Illinois Department of Financial and Professional Regulation
Chicago, Illinois
United States

Dear Mr. Grillo,

Thank you very much for your letter dated November 18 2004.

Please find our application for a permit to organize a state bank in Illinois, along with our business plan and financial projections for three years, for your kind review.

We assure you that U.S Finance House will restrictly adhere to all State and Federal banking laws and regulations. Our CEO Khalid A. Shair and his team is committed to complete this project and remain at your disposal to meet all the state requirements for the bank charter.

We appreciate your continous support and guidance in this project, and look forward to become a reputable cooperative citizen of the State of Illinois.

Sincerely yours,

Khalid Bin Ahmed Al Sowaidi
Chairman , U.S. Finance House

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Khaled A. Shair | ) | |
| Plaintiff, | ) | Civil Action No. 08-cv-01060 |
| | ) | |
| vs. | ) | |
| | ) | |
| Qatar Islamic Bank, | ) | |
| Khalid Bin Ahmad Al Swaidi, | ) | |
| Abdellatif Al Meer, | ) | Hon. Joan H. Lefkow |
| and | ) | |
| Chaudhary Mohammad Wasi, | ) | |
| Defendants. | ) | |

# Complaint Exhibit I



June 2, 2004

Bryan Cave LLP

161 North Clark Street

Suite 1200

Chicago, IL 60601-3206

Tel (312) 602-5000

Fax (312) 602-5050

www.bryancave.com

CONFIDENTIAL

U.S. Finance House
Attention: Mr. Choudry M. Wasi
Assistant General Manager, Finance and Administration
Qatar Islamic Bank
Chief Financial Officer, U.S. Finance House
c/o Eugene E. Murphy, Jr.
Bryan Cave LLP
161 North Clark Street
Suite 1200
Chicago, IL 60601

Chicago

Hong Kong

Irvine

Jefferson City

Kansas City

Kuwait

Los Angeles

New York

Phoenix

Riyadh

Shanghai

St. Louis

United Arab Emirates (Dubai)

Washington, DC

Re:    Engagement of Bryan Cave LLP

And Bryan Cave,
A Multinational Partnership,

London

Dear Mr. Wasi:

We are pleased that you have chosen to engage Bryan Cave LLP to provide legal services to U.S. Finance House in connection with (1) the organization of an Illinois state bank and its bank holding company, and (2) the organization of a private investment company, and (3) such future matters that we mutually agree to undertake. Consistent with our normal practice, this letter and the attached Statement of Engagement Terms and Billing Practices (the "Statement") set forth the terms of our engagement. The Statement is important and is provided to our clients so that they understand in advance how various issues will be handled.

Our fees for legal services are based on the time we spend on the engagement. In the event the nature of the services requested justifies a departure from that approach, we welcome the opportunity to discuss alternative arrangements. We separately charge for expenses and other charges incurred in connection with rendering our services, all as described in the Statement.

Our billing statements are normally rendered on a monthly basis and are due and payable upon receipt. We endeavor to include expenses and other charges in the

U.S. Finance House                                                    Bryan Cave LLP
June 2, 2004
Page 2

statement for the month in which they are incurred. On occasion, however, accounting for certain expenses and charges (i.e., late-posted items or international charges), may be delayed, in which case late-posted items will be billed on the next regular statement. The Firm reserves the right to charge a late payment penalty in the form of interest on any statements not paid within 30 days of the statement date at the legal rate of interest.

Our representation is conditioned upon receipt of the signed copy of this letter from you confirming your understanding and approval of these terms of our engagement, accompanied by your deposit check for $75,000.00, which will be used in accordance with the Statement.

You have requested a "not-to-exceed" fee amount for the services to be performed. For the indicated scope of services, our fees will not exceed the amount indicated if the assumptions underlying each scope remain valid. The fee amount excludes expenses such as filing fees, photocopy, facsimile, long distance telephone, authorized travel, and computerized support services.

1. Obtain de novo Illinois bank charter, with the bank being wholly-owned by a bank holding company.

   Organize one-bank holding company and obtain approval of Federal Reserve to acquire the Bank.

   Included in these services will be the preparation of the corporate organization documents, and review and coordination with Founders Group in the prosecution of the regulatory applications with the bank regulatory agencies.

   Excluded from the scope of our services are tax planning strategies, offering planning circulars or other disclosure documents required under the securities laws, and preparation or review of bank operating policies.

   The fee amount assumes the holding company will be privately held, there will be only one round of substantive discussions concerning the content of the applications, and the regulatory agencies will have only modest requests for modifications to the applications and not more than one request for further information.

   Fee: Not to exceed $65,000

2. Form private investment company, owned by a few individuals and not subject to registration with the Securities and Exchange Commission. The investment company will make private equity investments. Included in these services will be the preparation of the corporate organizational documents for the type of entity selected (e.g., corporation, limited liability company). Excluded from the scope of services are shareholder agreements, tax planning strategies, and offering circular or other disclosure documents to the extent required under the securities laws.

U.S. Finance House                                    Bryan Cave LLP
June 8, 2004
Page 3

    The fee amount assumes the investment company will be privately held and there will be only one round of substantive discussions concerning the content of the organizational documents.

    Fee: Not to exceed $10,000

Our attorney-client relationship is one of mutual trust and confidence. We do our best to see to it that our clients are satisfied not only with our services but also with the fees charged for those services. Whenever you have any questions or comments regarding our services or fees, you should contact me or any other attorney in the Firm with whom you are working. We also encourage you to inquire about any matter relating to our fee arrangements or monthly statements that are in any way unclear.

We appreciate the confidence you have placed in us and look forward to working with you. If this letter and the Statement correctly set forth our mutual understanding, please sign and date the enclosed copy of this letter and return it to us with the attached Statement.

Very truly yours,

Eugene E. Murphy, Jr.

THIS CONTRACT CONTAINS A
BINDING ARBITRATION PROVISION
WHICH MAY BE ENFORCED BY
THE PARTIES.

THESE TERMS INCLUDING THE ATTACHED
STATEMENT OF ENGAGEMENT TERMS AND
BILLING PRACTICES ARE APPROVED.

DATED:

U.S. Finance House

By: Mr. Choudry M. Wasi
Its Authorized Representative

SL01DOCS\1847644 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Khaled A. Shair | ) | |
| Plaintiff, | ) | Civil Action No. 08-cv-01060 |
| | ) | |
| vs. | ) | |
| | ) | |
| Qatar Islamic Bank, | ) | |
| Khalid Bin Ahmad Al Swaidi, | ) | |
| Abdellatif Al Meer, | ) | Hon. Joan H. Lefkow |
| and | ) | |
| Chaudhary Mohammad Wasi, | ) | |
| Defendants. | ) | |

# Complaint Exhibit J



**U.S. FINANCE HOUSE**
**208 SOUTH LASALLE STREET**
**CHICAGO, IL 60604**
**USA**
**PHONE: 312-927-0811**
**FAX: 312-553-1880**
**Email: kshair@usfinancehouse.com**

June 6, 2005

Eugene E. Murphy, Jr.
Bryan Cave LLP
161 North Clark Street, Suite 4800
Chicago, IL 60601-3206

Dear Mr. Murphy:

As you are aware, US Finance House LLC and Bryan Cave LLP have entered into an engagement letter, dated June 2nd, 2004 ("Engagement Letter"), detailing the services to be rendered by Bryan Cave to US Finance House in connection with its qualification as an Illinois state bank. These services included the organization of US Finance House and preparation for and completion of the regulatory process required to conduct business as an Illinois state licensed bank. The Engagement Letter also established a ceiling of $65,000. to complete these services. Your firm has now requested additional fees to be paid for services rendered to US Finance House.

In this regard, please detail any written agreement, amendment or modification under which US Finance House has agreed to make additional payments of fees to Bryan Cave for these services beyond the ceiling established by the Engagement Letter. Please also describe any services provided to US Finance House by Bryan Cave beyond those described in the Engagement Letter that would justify additional fees.

Upon receipt of this information, we will consider your request. However, we currently see no basis upon which to make additional payments to Bryan Cave for services rendered or remaining to be rendered to complete the undertakings of Bryan Cave pursuant to the Engagement Letter.

Very truly yours,

Mr. Khalid Bin Ahmed Al Sowaidi
Chairman

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Khaled A. Shair | ) | |
| Plaintiff, | ) | Civil Action No. 08-cv-01060 |
| | ) | |
| vs. | ) | |
| | ) | |
| Qatar Islamic Bank, | ) | |
| Khalid Bin Ahmad Al Swaidi, | ) | |
| Abdellatif Al Meer, | ) | Hon. Joan H. Lefkow |
| and | ) | |
| Chaudhary Mohammad Wasi, | ) | |
| Defendants. | ) | |

# Complaint Exhibit K



May 17, 2004

U.S Finance House

Attention: Khalid Shair
            Wasi Choudhry
                Re: Engagement for Advisory Services

Gentlemen:

This is to confirm the engagement of Founders Group, Inc., a Delaware corporation (*"Founders"*), by U.S. Finance House, an Illinois corporation (*"US Finance"*) to render certain advisory services in connection with US Finance's proposal to establish a new Illinois state-chartered bank (the *"New Bank"*). Under this proposal, the New Bank would be chartered under the Illinois Banking Act and would be organized for the purpose of accepting deposits and otherwise engage in a general banking business.

1. *Services to be rendered.* From and after US Finance's execution of this letter agreement and payment of the retainer fee contemplated by Section 2 hereof and until the termination of Founders' engagement in accordance with Section 6 hereof, Founders will provide such advice to US Finance as US Finance may reasonably request from time to time, in connection with the preparation by US Finance and its legal counsel for an application for Federal deposit insurance for the New Bank, including the business plan that will constitute a part thereof (the *"Application"*), to be filed with the Federal Deposit Insurance Corporation (the *"FDIC"*); *provided*, that Founders' engagement hereunder (a) shall not extend to providing any tax, legal, accounting, or regulatory advice whatsoever and (b) shall be limited exclusively to providing business advice concerning Illinois banking markets and customary banking practices within the United States insofar as such matters relate to the Application.

2. *Fees.* US Finance will pay to Founders (a) a retainer fee of U.S $100,000 upon US Finance's execution of this letter agreement and (b) and additional fee of U.S. $35,000 upon the first to occur of (i) the date when the Application is initially submitted by US Finance to the FDIC.

3. *Expenses.* US Finance will reimburse Founders for all out-of-pocket expenses reasonably incurred by Founders in connection with its engagement hereunder. Such reimbursement will be payable promptly upon submission by Founders of statements to US Finance.

1

4. *Finance Representations and Agreements.* US Finance represents and warrants to, and agrees with, Founders as follows:

    (a)  US Finance will furnish to Founders all such information concerning US Finance, its proposal to establish the New Bank, the operation, affiliates, directors, officers, management officials and owners of US Finance, and all persons, firms, corporations and other entities who are proposed to be shareholders (direct or indirect), directors or officers of the New Bank, as may be reasonably requested by Founders. All such information furnished by US Finance to Founders will be true, correct and complete.

    (b)  US Finance understands and acknowledges that Founders will have no obligation to provide services hereunder at any time when information requested by Founders, as contemplated by paragraph (a) of this Section, has not been provided.

    (c)  US Finance understands and acknowledges that Founders has no duties, responsibilities or obligations whatsoever, by reason of its engagement hereunder, other than as expressly provided for in this letter agreement. Without limiting the foregoing, Founders shall have no duties, responsibilities or obligation to assure that the Application is approved by the FDIC or that the New Bank can be established.

    (d)  US Finance has retained the law firm of Bryan Cave to represent US Finance in connection with the establishment of the New Bank. In respect of its engagement hereunder, Founders may rely on instruction and advice received from partners of, and other lawyers associated with, Bryan Cave.

    (e)  US Finance understands and acknowledges that Founders intends to disclose this letter agreement and the arrangements contemplated hereby to the Federal Reserve Bank of Chicago. US Finance consents to and approves such disclosure, and further consents to and approves any similar discourse by Founders to other regulatory or governmental authorities which Founders shall deem appropriate.

5. *Indemnification.* US Finance will indemnify each of the Indemnified Parties (as hereinafter defined) against, and hold each of the Indemnified Parties harmless from, any and all expenses (including, without limitation, reasonable fees and expenses of legal counsel), claims, liabilities judgments, fines losses and damages, which may be paid, incurred or suffered by such Indemnified Party or to which such Indemnified Party may be come subject, arising from or out of, whether directly or indirectly, this letter agreement of Founders' engagement hereunder; *provided however,* that no Indemnified Party will be indemnified or held harmless with respect to expenses, claims, liabilities, judgments, fines, losses or damages that result from such Indemnified Party's own gross negligence or willful misconduct. For purposes of this letter agreement, the term *"Indemnified Parties"* means Founders, its subsidiaries and affiliates, and its shareholders, directors, officers, employees and agents.

6. *Termination.* Founders engagement hereunder shall automatically terminate upon US Finance's initial submission of the Application to the FDIC, and may, in any event, be terminated at any time prior thereto by either US Finance or Founders for any reason whatsoever, and with or without cause, upon written notice to the other party; *provided, however,* that notwithstanding the foregoing, such termination shall not terminate or affect the agreements of the parties contained in this letter agreement, except only for those agreements contained in Section 1 hereof.

7. *Governing Law; Jurisdiction.* This letter agreement will be deemed made in Illinois, and will be governed by the laws of the State of Illinois. US Finance irrevocably submits to the jurisdiction of any court of the State of Illinois or the United States District Court of the Northern District of the State of Illinois for the purpose of any suit, action or other proceeding arising out of this letter agreement, or any of the agreements or transactions contemplated hereby, which is brought by or against US Finance.

8. *Independent Contractor; No Joint Venture.* The relationship of Founders to US Finance created by reason of Founders' engagement hereunder will, for all proposes, be that of an independent contractor. Without limiting the foregoing, no joint venture, partnership or other entity is being formed or shall exist between Founders and US Finance in connection with the organization of the New Bank by virtue of this Agreement or otherwise.

9. *Miscellaneous.* (a) This letter agreement (i) may be executed in two or more counterparts, each and all of which shall be deemed for all purposes to be one agreement, and (ii) may not be amended, except by an instrument in writing signed by each of the parties hereto.

(b) This letter agreement shall be binding upon and inure to the benefit of Founders and US Finance and their respective successors; *provided,* that the provisions of Section 5 hereof shall also inure to the benefit of (i) each of the Indemnified Parties, other than Founders, in the same manner and to the same extent as if each such Indemnified Party were a part to this Agreement, and (ii) each such Indemnified Party's heirs, personal representatives and successors.

If the foregoing correctly sets forth the agreements between US Finance and Founders, please so indicate by signing below and returning an executed copy of this letter agreement to us. We look forward to working with you.

Very truly yours,

FOUNDERS GROUP, INC.

By _____

Its Senior Vice President and
Chief Financial Officer

ACCEPTED AND AGREED TO:

By  Wasi Choudhry

Its___CFO_____

Date:_____

By  Khalid Shair

Its_____CEO_____

Date:____5/31/04_____

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Khaled A. Shair | ) | |
| Plaintiff, | ) | Civil Action No. 08-cv-01060 |
| | ) | |
| vs. | ) | |
| | ) | |
| Qatar Islamic Bank, | ) | |
| Khalid Bin Ahmad Al Swaidi, | ) | |
| Abdellatif Al Meer, | ) | Hon. Joan H. Lefkow |
| and | ) | |
| Chaudhary Mohammad Wasi, | ) | |
| Defendants. | ) | |

# Complaint Exhibit L



**ILLINOIS DEPARTMENT**
**OF FINANCIAL AND PROFESSIONAL REGULATION**

*FERNANDO E. GRILLO, SECRETARY*                    *ROD R. BLAGOJEVICH, GOVERNOR*

**Division of Banks and Real Estate**

# FAX TRANSMISSION COVER LETTER

DATE: <u>April 15, 2005</u>                    FAX NUMBER:  <u>708-923-0055</u>

PLEASE DELIVER TO:  <u>**Khaled Shair**</u>

LOCATION:

FROM:  <u>David S. Rodriguez – Assistant Director (DBRE) Tel. 312-793-4127.</u>

NUMBER OF PAGES (INCLUDING THIS COVER SHEET:  <u>5</u>

MESSAGE:   Deliver ASAP.

IF YOU DO NOT RECEIVE ALL THE PAGES INDICATED OR THERE IS A PROBLEM WITH
THE TRANSMISSION, PLEASE CALL <u>312-793-4127.</u>

**CONFIDENTIALITY NOTICE**

This fax transmission may contain confidential information belonging to the sender, which is legally privileged. This
message is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are
hereby notified that any disclosure, copying or distribution of the contents of this transmission is strictly prohibited. If
you have received this transmission in error, please notify us immediately by telephone to arrange for the return of the
documents.

IL 581-0114 (Rev 07-2004)

310 SOUTH MICHIGAN AVENUE • CHICAGO, ILLINOIS • 60604-4278 • PHONE: 312-793-1409 • FAX: 217-793-1490 • TDD: 312-793-0291
http://www.idfpr.com



# Illinois Department of Financial and Professional Regulation

### Division of Banks and Real Estate

**ROD R. BLAGOJEVICH**
Governor

FERNANDO E. GRILLO
Secretary

D. LORENZO PADRON
Director
Division of Banks and Real Estate

March 18, 2005

Monica Carroll, Esq.
Bryan Cave LLP
161 North Clark Street, Suite 4800
Chicago, Illinois 60601-3206

Re:    U.S. Finance House

Dear Ms. Carroll:

We appreciate your interest in the State of Illinois bank charter. You have requested that the Illinois Department of Financial and Professional Regulation (the "Department") provide a comment on your two preliminary business plans – one with FDIC insurance and the other without deposit insurance – of the proposed U.S. Finance House (the "bank"). Please be advised that any comments contained herein are informal and are intended only to provide general direction in your preparation of a formal application. Once a formal application is received other, more specific, issues may be identified. Our preliminary comments are as follows:

<u>Charter with FDIC insurance</u>

The Department has some concern regarding consumer acceptance of deposits that may share in the loss of the proposed bank during the start up phase. We note in the financial projections that the proposed bank expects to experience a negative return for the first year. In addition, there is no guarantee that future operations will be profitable, despite the projections. Insured deposits are normally considered a safe investment, free from principal loss up to limits insured by the Federal Deposit Insurance Corporation (FDIC). Given this, the application should more specifically address consumer acceptance of losses during the start up phase and the potential to share in losses in future operating periods.

The pro forma statements need additional clarification. Most de novo banks do not show an annual profit until the third full year of operation. The provided pro forma statements show a high level of profit at the end of year two. This anticipated performance will require more detailed explanation. Likewise, total asset projections are atypical of a de novo bank. We would require additional support for the projected growth.

The pro forma statements lack detail regarding the anticipated mix of traditional banking products and those products that are structured as *Sharia* compliant. In a formal application, we would expect greater detail regarding the anticipated levels of these products.

www.idfpr.com

Monica Carroll, Esq.
Re: U.S. Finance House
Page Two


The Department would prefer that a Chief Credit Officer/Senior Lender be identified prior to the submission of
an application.

We are pleased that the business plan includes an acknowledgement that Bank Secrecy Act compliance is
critical, and that the international nature of the proposed business adds a level of complexity to Bank Secrecy
Act compliance. The Department shares your concern. In that regard, we would prefer that the application
identify a highly qualified compliance officer, with a high level of knowledge and experience in assuring Bank
Secrecy Act compliance systems.

Not submitted with the proposed business plan were proposed policies and bylaws. The Department will
require these proposed documents in the application. In addition, we would require procedures that direct the
operations of Sharia compliant banking products.

Also not submitted in the business plan was proposed insurance coverage. The Department will require a
description of proposed insurance coverage.

The sample products provided in Exhibit 21 were produced by Citi Islamic Investment Bank. In the
application, we would expect that sample product agreements will be those that are written for, and that the
organizers intend to use, in the proposed bank.

The status and activities of the intended Oak Brook office need to be described in more detail. In the
Facilities" section, the business plan refers to this location as more of a representative office. However, in
Management Plan" section of the business plan, it lists staff more appropriate for a fully functioning branch
The status of this location should be better defined.

The cover page of the business plan indicates that the bank will seek deposit insurance from the FDIC. If you
have not yet made contact with the FDIC, we would suggest that you do so. Similarly, the establishment of a
holding company will require the approval of The Federal Reserve. We also encourage you to make contact
with the Federal Reserve Bank of Chicago to discuss that application as well.

Charter – No Deposit Insurance Plan

No pro forma statements were provided with the preliminary application. Without pro forma statements we are
unable to make any determination regarding the financial feasibility of the proposed bank. Accordingly, our
response to the business plan without deposit insurance is very limited.

The Department has concern regarding bank funding without insured deposits. We are concerned that any
monies contributed to the bank may be interpreted as investments. This may subject the bank to additional
regulation by the Securities and Exchange Commission. This regulation may have a significant impact on bank
operations and may result in substantial legal liability. A formal application will need to address this issue.

Monica Carroll, Esq.
Re: U.S. Finance House
Page Three

The Department would need more specific information regarding the implementation of deposit insurance. The preliminary plan is very vague. A formal application will need greater detail, particularly if the organizers intend to obtain deposit insurance within the first three years of operation.

The Department has some concern regarding consumer acceptance of deposits once deposit insurance is obtained. We note that non-demand deposits may share in the loss of the proposed bank during the start up phase. While no financial projections were provided, we would expect the bank to experience a negative return for the first two years. In addition, there is no guarantee that future operations will be profitable after that point. Insured deposits are normally considered a safe investment, free from principal loss up to limits insured by the Federal Deposit Insurance Corporation (FDIC). Given this, the application should more specifically address consumer acceptance of losses during the start up phase and the potential to share in losses in future operating periods.

The Department would prefer that a Chief Credit Officer/Senior Lender be identified prior to the submission of an application.

We are pleased that the business plan includes an acknowledgement that Bank Secrecy Act compliance is critical, and that the international nature of the proposed business adds a level of complexity to Bank Secrecy Act compliance. The Department shares your concern. In that regard, we would prefer that the application identify a highly qualified compliance officer, with a high level of knowledge, experience, and sufficient support staff to assure compliance with the Bank Secrecy Act.
Not submitted with the proposed business plan were proposed policies and bylaws. The Department will require these proposed documents in the application. In addition, we would require procedures that direct the operations of *Sharia* compliant banking products.

Also not submitted in the business plan was proposed insurance coverage. The Department will require a description of proposed insurance coverage.

The sample products provided in Exhibit 21 were produced by Citi Islamic Investment Bank. In the application, we would expect that sample product agreements will be those that are written for, and that the organizers intend to use in, the proposed bank.

The status and activities of the intended Oak Brook office need to be described in more detail.

The Department will need more detail on reputation risk. The proposed bank will experience a somewhat unique reputational risk profile in that it will be guaranteeing to customers that its products comply with specific religious tenets. We will require detail on how this risk will be managed. The business plan also notes that it will utilize third parties to provide products not authorized by the Illinois Banking Act. Given this, the application will need to describe how the bank will control the reputational, as well as other risks, associated with third party providers.

www.idfpr.com

Monica Carroll, Esq.
Re: U.S. Finance House
Page Four

The Department will need more detail on risk management activities. In specific, we will need to know how audit and loan review will operate and how those activities will expand as the bank grows through its first three years of operations.

A formal application will need to describe how management will monitor operations and performance without key monitoring tools provided to banks with federally insured deposits. In specific, the bank will not have access to a Uniform Bank Performance Report. This financial tool provides management and regulators with a basis of comparison with banks of similar size and geographic location.

The establishment of a holding company will require the approval of The Federal Reserve. We encourage you to make contact with the Federal Reserve Bank of Chicago to discuss their application process.

The Department also strongly believes you should consult with the FDIC even if you do not intend to purchase deposit insurance in the near term. We are concerned that the bank may institutionalize a business practice during start up operations that the FDIC would later find to be contrary to federal policy or law.

Again, thank you for your interest in obtaining a banking charter from the State of Illinois. We look forward to your application. In the meantime, if you have any questions regarding the application process, please direct them to Ms. Lisa Petrilli at 312.793.0071. Questions regarding the proposed business plan of the bank should be directed to Mr. Ric Bunskill, CFA, at 312.793.6602. Both parties can be reached in writing at the Department of Financial and Professional Regulation, Division of Banks and Real Estate, 310 South Michigan Avenue, Suite 2130, Chicago, Illinois, 60604-4278.

Sincerely,

David S. Rodriguez
Deputy Director
IDFPR Division of Banks and Real Estate
310 S. Michigan Ave., Suite 2130
Chicago, IL 60604
312) 793-4127
312) 793-7097 fax
e-mail: drodriguez@idfpr.com

www.idfpr.com

TOTAL P.05

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Khaled A. Shair | ) | |
| Plaintiff, | ) | Civil Action No. 08-cv-01060 |
| | ) | |
| vs. | ) | |
| | ) | |
| Qatar Islamic Bank, | ) | |
| Khalid Bin Ahmad Al Swaidi, | ) | |
| Abdellatif Al Meer, | ) | Hon. Joan H. Lefkow |
| and | ) | |
| Chaudhary Mohammad Wasi, | ) | |
| Defendants. | ) | |

# Complaint Exhibit M

**Qatar Islamic Bank**
(S.A.Q.)

مصرف قطر الإسلامي
شـركـة مـسـاهمة قطرية

Date: 27th April, 2004

**Mr. Khaled A. Shair**
Chief Executive Officer
US Finance House
8801 Lake Ridge
Darien IL. 60561
United States of America

Dear Mr. Khaled,

Please note that our Assistant General Manager, Mr. Choudhry Mohammad Wasi will soon be joining US Finance House.

We enclose a copy of his passport, a brief resume, and a copy of Permanent Resident Card in Canada, and request you to arrange through your law office a work permit in USA for Mr. Choudhry at your earliest.

We appreciate your cooperation and assistance.

Thanking you,

**Khalid Bin Ahmed Al Swaidi**
Chairman