IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KHALED A. SHAIR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Case No. 08-CV-1060 |
| vs. ) | |
| ) | Judge Joan H. Lefkow |
| ) | |
| QATAR ISLAMIC BANK, ) | |
| KHALID BIN AHMAD AL SWAIDI, ) | |
| ABDELLTAIF AL MEER, and ) | |
| CHAUDHARY MOHAMMAD WASI, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants, Qatar Islamic Bank ("QIB"), Khalid Bin Ahmad Al Swaidi ("Swaidi"), Abdullatif Al Meer ("Al Meer") and Chaudhary Mohammad Wasi ("Wasi"), move to dismiss and strike portions of the complaint filed by Plaintiff, Khaled A. Shair ("Shair"), under Federal Rules of Civil Procedure 12(b)(6) and 9(b). Shair's complaint asserts claims for breach of contract (Count I) and, in the alternative, quantum meruit (Count II) and promissory estoppel (Count III); fraud (Count IV); and promissory fraud (Count V). Jurisdiction is proper under 28 U.S.C. §1332 because the parties are completely diverse, as the plaintiff is a citizen of Illinois and defendants are citizens of a foreign state, and the amount in controversy is in excess of $75,000. For the reasons discussed herein, the defendants' motion to dismiss and strike [#39] will be granted in part and denied in part.

1

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). For the purposes of a Rule 12(b)(6) motion, the court takes as true all well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999). "To state a claim upon which relief may be granted, the complaint need only contain a 'short and plain statement of the claim showing the pleader is entitled to relief.'" *EEOC* v. *Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing Fed. R. Civ. P. 8(a)(2)). The complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the . . . . claim is and the grounds upon which it rests." *Id*. at 776 (citing *Bell Atl. Corp*. v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)). "[I]ts allegations must plausibly suggest that the defendant has a right to relief, raising that possibility above a speculative level." *Id*.

Additionally, because Shair also asserts claims for fraud and promissory fraud, Counts IV and V are subject to the heightened pleading standard of Rule 9(b), which requires the plaintiff to "to state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The plaintiff must plead the "who, what, where, when, and how" of the alleged fraud. *Uni\*Quality, Inc.* v. *Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (internal quotations and citations omitted). "In a case involving multiple defendants . . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Vicom, Inc.* v. *Harbridge Merchant Servs.*, 20 F.3d 771, 778 (7th Cir. 1994); *see also Zic* v. *Italian Gov't Travel Office*, 149 F. Supp. 2d 473, 477 (N.D. Ill. 2001) ("The particularity requirement of Rule

9(b) means that a plaintiff may not 'lump' multiple defendants together in a fraud claim; he must identify the nature of defendant's participation in the alleged fraud.").

## BACKGROUND[1]

Defendants Swaidi, Wasi, and Al Meer ("individual defendants") are officers of QIB.[2] Prior to October 2004, Shair was the managing director of Founders Group, Inc., a holding company of several domestic U.S. banks and CEO of one of its subsidiaries. Shair and the individual defendants met on March 21, 2004 in Chicago, Illinois to discuss establishing a commercial bank in the United States, to be named "US Finance House," that would provide banking services based upon Islamic banking principles. Shair alleges that, at that meeting, the individual defendants authorized Shair to take all the necessary steps to organize and obtain required banking licenses for US Finance House and agreed to compensate him for his services.

On April 26, 2004, Shair traveled to Doha, Qatar to meet with the individual defendants. Shair alleges that they discussed the organization and licensing of US Finance House, as well as hiring and compensating Shair for the services he was to render as CEO of US Finance House. On April 28, 2004, Swaidi wrote a letter to Shair on QIB stationery ("April 28th letter") which states:

> Dear Mr. Shair,
>
> Thank you for your accepting our invitation and visiting us in Doha on 26th April 2004. We appreciate your professional assistance provided to us in respect of US Finance House, Chicago.
>
> It is our pleasure to offer you the appointment in US Finance House as Chief Executive Officer (CEO) with remuneration in line with American Finance Industry Standards. However, your

---

[1] The background contains references to Exhibits A through G which are attached to Shair's complaint and, thus, a part thereof. *See* Fed. R. Civ. P. 10(c)

[2] Swaidi is the chairman and managing director of QIB, Wasi is its CFO, and Al Meer is the assistant general manager. Compl. ¶¶ 9-11.

> appointment and remuneration shall be confirmed by the Board of
> Directors of US Finance House.
>
> * * *
>
> Effective 1st May, 2004, we will pay US$ 10,000 on a monthly
> retainer till the confirmation of your appointment as CEO by the
> Board of Directors. Such payment shall be to meet your cost of
> engagement in respect of professional services rendered by you.
>
> We highly appreciate your cooperation and professional assistance.
>
> Thanking you,
>
> Khalid Bin Ahmed Al Swaidi
> Chairman

Ex. B to Compl. Shair alleges that he immediately accepted the offer of employment by undertaking tasks on behalf of US Finance House, such as undertaking a feasibility study and business plan supporting the likely success of US Finance House as a licensed bank in Illinois. Compl. ¶¶ 20-21. Shair asserts that QIB paid him approximately $30,000 in mid-2004 pursuant to the terms of the April 28th letter.

From September 2004 to February 2006, the parties undertook several efforts to organize US Finance House as an Illinois bank. On September 9, 2004, QIB executed a guaranty of rents for a lease of property on which US Finance House was to be located. On October 3rd and 4th of 2004, Shair and the individual defendants met in London to discuss the process of forming US Finance House and came to several decisions documented in the minutes of that meeting. Shair asserts that at this meeting the board of organizers also confirmed the appointment of the officers of US Finance House, including the appointment of Shair as CEO.[3] The minutes were signed by all attendees and identify Shair as "Chief Executive Officer." *See* Ex. E to Compl. After the meeting of the board of organizers, Shair alleges that he terminated his employment with

---

[3]This decision is not reflected in the minutes of the meeting, attached to the complaint as Exhibit E.

Founders Group in order to work full-time on behalf of organizing US Finance House. Compl. ¶ 25. Thus, from October 2004 to February 2006, Shair began locating and securing appropriate banking facilities, meeting with regulatory authorities and members of the commercial and investment banking community, interviewing prospective employees, arranging background checks of defendants as organizers of a United States bank, and preparing all necessary documentation for the application of US Finance House to conduct banking activities in Illinois. *Id*. ¶ 26.

On December 7, 2004, Swaidi submitted the application to organize US Finance House to the Secretary of the Illinois Department of Financial and Professional Regulation in which he represented that Shair was the CEO of US Finance House. Despite submitting the application and their various other efforts at organization, the defendants notified Shair in late February 2006 that they had decided to terminate their plans to form US Finance House.[4] Despite his repeated demands for compensation and defendants' assurances that he would be compensated for his work on behalf of US Finance House, Shair alleges that he was not paid anything for his efforts beyond the initial $30,000 payment. *Id*. ¶ 40.

## DISCUSSION

### I.  Breach of Contract (Count I)

Defendants' main argument is that Count I must be dismissed because no employment contract was formed between the parties; however, defendants first contend that even if an employment contract was formed, the individual defendants could not be held liable because they were acting in their official capacities.

---

[4]Shair contends that, despite his repeated requests, defendants failed to deposit the requisite capital and withheld necessary personal and financial information from state and federal authorities, all of which prevented US Finance House from being formed. Compl. ¶¶ 38-39.

### A. Liability of Individual Defendants

Defendants argue that plaintiff asserts no viable basis for holding Swaidi, Al Meer and Wasi personally liable for breach of contract because they were acting in their official capacity as officers of QIB. Defendants rely on *Zic* v. *Italian Gov't Travel Office*, for the proposition that individuals who enter into a contract on behalf of a corporation cannot be held personally liable for breach of that contract. 130 F. Supp. 2d at 996 (dismissing individual defendants who acted on behalf of a corporation from a breach of contract claim); *see also Sullivan* v. *Cox*, 78 F.3d 322 (7th Cir. 1996) ("When an officer signs a document and indicates next to his signature his corporate affiliation, then absent evidence of contrary intent in the document, the officer is not personally bound.") (quoting *Wottowa Ins. Agency, Inc.* v. *Bock*, 472 N.E.2d 411, 413, 104. Ill. 2d 311, 84 Ill. Dec. 451 (Ill. 1984)). Shair alleges that the April 28th letter, which was signed by Swaidi as chairman of QIB, constitutes a written offer by QIB to appoint him CEO of US Finance House. Compl. ¶ 17. Because Shair asserts that the offer was made on behalf of QIB, Swaidi, who is QIB's chairman, and the other individual defendants, who are corporate officers of QIB but did sign the offer, cannot be held liable on Count I. Accordingly, Swaidi, Al Meer and Wasi will be dismissed as defendants from Count I.

### B. Liability of QIB

Defendants argue that Count I must be dismissed as to QIB because no contract was formed between Shair and QIB. It is well-established under Illinois law that contract formation requires an offer, acceptance, and consideration. *See Chicago Limousine Serv*. v. *City of Chicago*, 781 N.E.2d 421, 426, 335 Ill. App. 3d 489, 269 Ill. Dec. 624 (Ill. App. Ct. 1st Dist. 2002) (citing *Estate of Chosnyka* v. *Meyer*, 585 N.E.2d 204, 206, 223 Ill. App. 3d 493, 165 Ill. Dec. 808 (Ill. 1992)); *accord United States ex rel. Countryside Indus., Inc.* v. *Integrated Constr.*

*Tech. Corp.*, No. 07 CV 2633, 2007 U.S. Dist. LEXIS 76008 (N.D. Ill. Sep. 28, 2007) (Kendall, J.). The parties agree that the April 28th letter constitutes an offer; however, defendants characterize the offer as conditioned upon Shair's confirmation by the Board of Directors. *See* Compl. ¶ 20; Defs.' Mem. at 5. At this stage in the litigation, the court need not decide whether the offer was subject to a condition precedent because, assuming for the purposes of this motion that it was, Shair has adequately pled that the alleged condition was fulfilled. Shair alleges that his appointment was confirmed by the board of organizers at the meeting in London. Defendants contend that this statement is contradicted by the minutes of that meeting, because the confirmation is not listed explicitly therein. Essentially, defendants are arguing that Shair's allegation that his appointment was confirmed is not well-pled. Construing the facts in the light most favorable to Shair, however, the minutes are not conclusive because the confirmation could have occurred orally and the absence of a note indicating such is not sufficient to defeat Shair's allegations.

Defendants also take issue with Shair's allegation that he immediately accepted the offer by beginning to act on behalf of US Finance House, arguing that the exhibits submitted in support of this allegation are dated 6 to 8 months after the alleged date of acceptance and do not constitute acceptance. *See* Defs.' Mem. at 5. This is a factual issue not suitable to adjudication on a motion to dismiss. Shair's allegation that he immediately accepted QIB's offer is sufficient. Furthermore, it is supported by his contention that he immediately undertook a feasibility study and business plan regarding the likelihood of US Finance House's success. *Id*. 21. Thus, Shair has adequately pled the element of acceptance and, consequently, the formation of a contract.

**II.     Quantum Meruit**

Defendants argue that Count II fails to state a valid claim for recovery in quantum meruit.  Preliminarily, defendants argue that Count II is deficient because it fails to allege the absence of a valid contract.  The general rule in the Seventh Circuit is that "when two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Utility Audit, Inc.* v. *Horace Mann Serv. Corp.*, 383 F.3d 683, 688-89 (7th Cir. 2004) (citing *Cromeens, Holloman, Sibert, Inc.* v. *AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003)).  This rule is inapplicable in this case, however, because defendants themselves dispute the very existence of the contract upon which Shair seeks relief in Count I.  Thus, Shair is entitled under Rule 8(e)(2) to plead Counts I and II in the alternative.  *See Poindexter* v. *Nat'l Mortgage Co.*, No. 94 C 5814, 1995 U.S. Dist. LEXIS 5396, at *20-21 (N.D. Ill. Apr. 18, 1995) (allowing plaintiff to proceed with claims for breach of contract and unjust enrichment in the alternative until defendant concedes that a contract governs the subject matter of the lawsuit).  *Cf. Bank One* v. *Trammel Crow Servs.*, No. 03 C 3624, 2003 U.S. Dist. LEXIS 23120, at *21-22 (N.D. Ill. Dec. 22, 2003) (Lefkow, J) (dismissing claim for unjust enrichment brought in the alternative to a claim for breach of contact because "the parties agree that the contract governs their relationship").

To state a cause of action for recovery in quantum meruit, a plaintiff must allege "the performance of services by the party, the conferral of the benefit of those services on the party from whom recovery is sought, and the unjustness of the latter party's retention of the benefit in the absence of any compensation." *Roti* v. *Roti*, 845 N.E.2d 892, 900, 364 Ill. App. 191, 301 Ill. Dec. 27 (Ill. App. Ct. 1st Dist. 2006) (internal quotations omitted).  Defendants argue that Count II should be dismissed because although Shair alleges he performed services on behalf of US

Finance House from October 2004 to February 2006, the exhibits he provides in support of this allegation do not constitute performance. Defs.' Mem. at 7-8. Whether Shair actually performed services that benefitted defendants is a factual issue not appropriate for resolution on a motion to dismiss. As defendants themselves acknowledge, Shair has alleged that he performed services that benefitted defendants by locating and securing appropriate banking facilities, meeting with regulatory authorities and members of the commercial and investment banking community, interviewing prospective employees, arranging background checks of defendants as organizers of a United States bank, and preparing all necessary documentation for the application of US Finance House to conduct banking activities in Illinois. *See* Compl. ¶ 26. These allegations are sufficient to raise Shair's right to relief on his quantum meruit claim above a speculative level. Accordingly, defendants' motion to dismiss Count II is denied.

### III. Promissory Estoppel (Count III)

Defendants argue that Count III fails to state a claim for promissory estoppel because Shair does not allege a specific promise by defendants upon which he reasonably relied. To state a claim for promissory estoppel in Illinois, the plaintiff must allege (1) an unambiguous promise; (2) reasonable and justifiable reliance by the party to whom the promise was made; (3) the reliance was expected and foreseeable by the promisor; and (4) the promisee relied upon the promise to her detriment. *Fischer* v. *First Chicago Capital Mkts.*, 195 F.3d 279, 283 (7th Cir. 1999) (internal citations omitted). Shair alleges that, pursuant to the April 28th letter, he was entitled to $10,000 per month pending confirmation of his appointment as CEO by the Board of Directors of US Finance House and that thereafter his remuneration was to be in line with American Finance Industry Standards. Compl. ¶ 19. He further alleges that he relied on defendants' promises to his detriment by resigning as managing director of Founders Group after

9

returning from the meeting in London where he contends his appointment as CEO of US Finance House was confirmed. *Id*. ¶¶ 24, 25, 58. The defendants contend that the April 28th letter does not contain a specific promise on which Shair reasonably relied because the offer to employ and compensate Shair was contingent upon confirmation by the Board of Directors, which defendants argue never occurred. *See* Defs.' Mem. at 9. As discussed above with regard to the breach of contract claim, whether the Board of Directors actually confirmed Shair's appointment as CEO is a factual issue. Moreover, the letter contains a specific promise to pay Shair $10,000 per month until his confirmation occurred. Thus, even if confirmation never occurred, Shair could still assert a claim for promissory estoppel. Accordingly, the defendants motion to dismiss Count III is denied.

## IV. Fraud (Count IV) and Promissory Fraud (Count V)

Defendants contend that Shair has failed to plead with specificity the who, what, when and where of the alleged fraud in this case. To plead common law fraud in Illinois, a plaintiff must allege "(1) a false statement of material fact, (2) known or believed to be false by the party making it, (3) intent to induce the other party to act, (4) action by the other party in reliance on the truth of the statement and (5) damage to the other party resulting from such reliance." *Soules* v. *Gen. Motors Corp.*, 402 N.E.2d 599, 601, 79 Ill. 2d 282, 37 Ill. Dec. 597 (Ill. 1980) (citations omitted); *accord Addison* v. *Distinctive Home, Ltd.*, 836 N.E.2d 88, 92, 359 Ill. App. 3d 997, 296 Ill. Dec. 673 (Ill. App. Ct. 1st Dist. 2005). In a case involving promissory fraud (that is, where the alleged misrepresentation involves a promise to do, or not do, something in the future), an additional element must be pled: a "scheme" to defraud. *Speakers of Sport, Inc.* v. *ProServ, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999); *Desnick* v. *Am. Broad. Cos, Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995) (holding that "promissory fraud is actionable only if it either is particularly egregious or,

what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy."). Claims of fraud require that the allegedly fraudulent statement be an intentional misrepresentation at the time it was made. *See Ass'n Benefit Servs.* v. *Caremark Rx, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007). For promissory fraud claims, this requirement means that, when the promise was made, the promisor had no intent to fulfill it; if the promisor simply later changed his mind, an action for fraud will not lie. *Id.*

In Counts IV and V, Shair alleges that:

> Defendants promised orally and in writing to pay Plaintiff's reasonable compensation for the services performed by Plaintiff and misleadingly approved the organization, capitalization and licensing of US Finance House, with no intention to file the required personal background and financial information and regulatory documents, or to provide the promised capitalization of US Finance House . . . .

Compl. ¶¶ 63, 71. Such allegations are not specific enough to meet the specificity requirement of Rule 9(b). Counts IV and V fail to identify which of the statements and promises form the basis of Shair's fraud claims, who made those statements, when they were made, and how they constitute a scheme to defraud. Shair also fails to allege that the defendants knew that their statements were false and had no intention of filling their promises at the time they were made. Rather, from the face of the complaint, it appears that defendants did intend to and, in fact, did fulfill some of their promises and statements regarding the organization and licensing of US Finance House. For example, Shair alleges that defendants retained Shair's services and paid him $30,000 for his work on behalf of US Finance House, executed a guaranty of a rental property where US Finance House was to be located, and filed the application for a permit to organize US Finance House as an Illinois bank with the Illinois Department of Financial and

11

Professional Regulation. *Id.* ¶¶ 14, 23, 28. Accordingly, Shair's claims for fraud must be dismissed.

V.      **Attorneys' Fees and Treble Damages**

Defendants argue that the request for attorneys' fees and treble damages should be stricken from the complaint. For each count, Shair requests attorneys' fees "pursuant to any available statutory or common law basis." *See*, *e.g.*, Compl. at 17. Under Illinois law, parties bear their own litigation costs, including attorneys' fees, unless otherwise provided for by statute, court rule, or other agreement. *In re Weinschneider*, 395 F.3d 401, 404 (7th Cir. 2005). Heightened pleading requirements apply to requests for attorneys' fees. *See United States* v. *All Meat & Poultry Prods.*, 470 F. Supp. 2d 823, 835 (N.D. Ill. 2007). Because Shair fails to specify any applicable statute or theory of common law, his request fails under the heightened pleading requirements and must be stricken. Shair also requests treble damages in Counts IV and V on his fraud claims. As Shair fails to state viable claims for fraud, his request for treble damages must be stricken.

VI.     **Motion to Strike Exhibit G**

Federal Rule of Evidence 408 forbids the admission of statements made during settlement negotiations to prove liability or lack thereof. *Bankcard Am., Inc.* v. *Universal Bancard Sys., Inc.*, 203 F.3d 477, 483 (7th Cir. 2000). The defendants move to strike Exhibit G, a letter from QIB's Legal Affairs Department, arguing that it is "part of a settlement discussion and response to Plaintiff's earlier settlement demand." Defs.' Mem. at 14. Exhibit G does not make any reference to settlement matters or negotiations, rather it disputes Shair's contention that he was employed by QIB and rejects Shair's demand for compensation. Thus, without

12

extrinsic proof that it is part of a settlement discussion, the defendants' motion to strike Exhibit G is denied.

## **CONCLUSION AND ORDER**

For the foregoing reasons, the individual defendants are dismissed from Count I, leaving QIB as the only remaining defendant. Counts IV and V are dismissed entirely, without prejudice to replead. The defendants' motion to dismiss Counts II and III is denied. Lastly, the defendants' motion to strike Shair's request for attorney's fees and treble damages is granted and their motion to strike Exhibit G is denied.

Dated: March 16, 2009	Enter: _____
	JOAN HUMPHREY LEFKOW
	United States District Judge